IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 2000 SESSION



FILED

**March 15, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. W1999-00972-CCA-R3-CD |
| | ) | |
| | ) | Hardin County |
| v. | ) | |
| | ) | Honorable C. Creed McGinley, Judge |
| | ) | |
| PETER ALLEN ROSS, | ) | (Possession of over .5 grams of cocaine with |
| | ) | intent to sell and possession of drug |
| Appellant. | ) | paraphernalia) |


For the Appellant:

Guy T. Wilkinson
District Public Defender
    and
Richard W. DeBerry
Assistant Public Defender
117 North Forrest Avenue
Camden, TN 38320

For the Appellee:

Paul G. Summers
Attorney General of Tennessee
    and
Clinton J. Morgan
Counsel for the State
425 Fifth Avenue North
Nashville, TN 37243

G. Robert Radford
District Attorney General
Post Office Box 686
Huntingdon, TN 38344-0686
    and
John W. Overton, Jr.
Assistant District Attorney General
Post Office Box 484
Savannah, TN 38372-0484


OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Peter Allen Ross, appeals as of right his convictions by a jury in the Hardin County Circuit Court for possession of more than one-half gram of cocaine with intent to sell, a Class B felony, and possession of drug paraphernalia, a Class A misdemeanor. The trial court sentenced the defendant as a Range I, standard offender to twelve years in the Department of Correction for the felony and a concurrent eleven months and twenty-nine days for the misdemeanor. The court imposed a fifty-thousand-dollar fine for the felony and a twenty-five-hundred-dollar fine for the misdemeanor. The defendant contends: (1) that the evidence is insufficient to support his convictions, (2) that the trial court should have suppressed the evidence obtained during the warrantless search of his motel room, and (3) that his sentence is excessive. We affirm the judgments of conviction.

Officer Victor Cherry of the Savannah City Police Department testified that in August 1998, the police department received a report of stolen checks. He said that on August 31, he and Officer Allen Snelling arrested Patricia Lishman at Wal-Mart for attempting to pass one of the stolen checks. He said they took Ms. Lishman to Shaw's Comfort Motel, hoping to find the other stolen checks. He said that when asked which room was hers, Ms. Lishman pointed to room 121. He said he and Officer Snelling knocked on the door of 121, but no one answered. He said they decided to let Ms. Lishman knock, but then someone opened the door. He said that four people were in room 121 and that he could smell marijuana. He said he and Officer Snelling began removing the occupants one at a time and having them empty their pockets onto a metal chair outside the room. He said they found a small amount of marijuana in room 121 and more marijuana in a purse.

2

Officer Cherry testified that the defendant came out of the room and was instructed to empty his pockets. He said one of the officers asked the defendant to remove his shoes. He said Officer Johnny Murphy alerted him that the defendant had something in his hand. He said that it was a key to room 132. He said that he asked the defendant if he knew whose key it was and that the defendant replied that it was not his key, but it belonged to Shafon Black, one of the four occupants of room 121. Officer Cherry said Ms. Black said that it was not her key and that she did not know the defendant that well. He said they arrested Ms. Black for possession of marijuana.

Officer Cherry testified that he thought the defendant might try to run because the defendant kept trying to get between him and the wall. He said that he and another officer walked the defendant toward the patrol car. He said the defendant began throwing his arms up and jerking as if he were trying to escape. He said that they had to force the defendant to the ground before putting him in the patrol car. He said that Officer Murphy unlocked the door to room 132 and partially opened it but then decided to wait for Officer Russ Alexander to arrive with the drug detection dog. He said Officer Alexander searched room 132 with the dog. Officer Cherry said the defendant was not arrested for possession of marijuana.

Officer Johnny Murphy of the Hardin County Sheriff's Department testified that on August 31, 1998, he went to Shaw's Motel to aid some city officers. He said that when he arrived, Officers Cherry and Snelling were bringing people out of a motel room and searching them. He said he recognized the defendant. He said that a motel key fell out of the defendant's sock and that the defendant quickly picked it up and tried to hide it. He said he took the key from the defendant who said it belonged to a girl inside the motel room. He said the defendant denied that the key was his.

Officer Murphy testified that he unlocked the door to room 132 but then stopped to wait for Officer Alexander to arrive with the drug detection dog. He said Officer Alexander searched room 132 with the dog. He said he opened a night stand drawer and found a large amount of crack cocaine. He said that they secured the scene until the city's drug investigator arrived and that they turned the case over to him.

Officer Russ Alexander of the Hardin County Sheriff's Department testified that after 2:00 a.m. on August 31, 1998, he and his drug detection dog, Duke, were dispatched to Shaw's Comfort Motel. He said that he asked a girl standing outside room 121 if he could search that room and that the girl said he could search anything she had. He said the dog found a small amount of marijuana in a clear cellophane wrapper behind a dresser. He said that one of the subjects from room 121 claimed the marijuana, but he did not remember which one. He said that he next searched room 132 and that the dog went straight to the night stand. He said the drawer contained a large amount of what appeared to be crack cocaine. He stated that it was the most crack cocaine that he had ever seen at one time.

Mike Moncher testified that on August 31, 1998, he was working on the drug task force of the Savannah City Police Department. He said he was dispatched to Shaw's Comfort Motel, where officers told him they had found crack cocaine in room 132. He said he photographed two sandwich bags filled with a large amount of crack cocaine, a set of digital scales, and a roll of plastic sandwich bags in room 132. He testified that the scales measured both grams and ounces and were of the type commonly used to weigh narcotics. He said sandwich bags are commonly used to package crack cocaine for resale. He said he also found in room 132 a car title and a receipt bearing the defendant's name and the defendant's billfold, which contained a second car title bearing the defendant's name.

4

Natu Batel testified that he owned Shaw's Comfort Motel in August 1998. He said room 132 was registered in the defendant's name to a party of two from August 28 to August 31. He said he recalled the defendant paying in cash for the room each day. He said he did not know who went in or out of room 132 during those four days. He stated that room 121 was registered to Billy Ross.

Special Agent Kay Sherriff testified that she worked at the Tennessee Bureau of Investigation Crime Laboratory as a forensic scientist specializing in drug identification. She said she received a substance for analysis from Officer Mike Moncher. She said she identified the substance as cocaine base, which is known on the street as crack cocaine. She said the total weight of the substance was 53.5 grams.

Patricia Lishman testified that on the night of August 30 and the early morning of August 31, she was arrested for forgery at Wal-Mart. She said that after the officers learned that she was acting with another person, they took her to Shaw's Comfort Motel to look for evidence in her forgery case. She said she had been staying in room 116 with her son and his girlfriend for three days. She said that without asking her which room was hers, the officers knocked on room 121. She said that when no one answered, they returned to the patrol car and asked her to knock on the door. She said she knocked, a man answered, and the officers asked her if this was her room. She said she told the officers that it was not her room, and they asked her if she knew anyone in the room. She said she told them no, and they put her back in the patrol car.

Ms. Lishman testified that the officers started bringing people out of room 121 and searching them. She said they put a girl in the patrol car with her and a man in another patrol car. She said she recognized the defendant when the officers brought him out of the room. She said she saw the officers search the defendant and take

5

something from him. She testified that the defendant kept yelling, "Why are you doing this to me?" She said that the defendant continued to yell as the officers took him to a patrol car. She said that when she looked over again, the officers had the defendant on the ground and then put him in the patrol car. She said the officers went to room 116 and talked with her son and his girlfriend before they took her and the others to jail.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to sustain his convictions because the motel owner testified that another person was a guest in room 132 and that he did not know who went in the room during the time it was registered to the defendant. The state contends that the defendant has waived this issue because he does not accompany this assertion with any further argument. See Tenn. Ct. Crim. App. R. 10(b). Alternatively, the state contends that the evidence is sufficient.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Initially, we note that we will treat issues unsupported by argument, citation to authorities, or references to the record as waived. Tenn. Ct. Crim. App. R. 10(b). In his brief, the defendant provides citations for our standard of review of the sufficiency of the evidence and cites to the relevant portions of the trial transcript for the motel owner's testimony. Although his argument on this issue is unduly brief, we

6

believe him to be challenging the sufficiency of the state's proof identifying him as the person to whom the cocaine belonged. In the light most favorable to the state, Officers Cherry and Murphy testified that the defendant had the key to room 132 on his person when they searched him on August 31. Mr. Batel, the motel owner, testified that the room was registered to the defendant, who paid him in person, on August 28 through August 31. Officer Murphy testified that he unlocked the door to room 132. Officers discovered crack cocaine, digital scales and sandwich bags in a drawer of the night stand in room 132. Officer Moncher testified that he found the defendant's billfold and a receipt and two car titles bearing the defendant's name in room 132. This evidence is sufficient to support the jury's determination that the crack cocaine belonged to the defendant.

## II. SUPPRESSION OF THE EVIDENCE

The defendant contends that the trial court should have suppressed the evidence from room 132 because the warrantless search of the room was illegal. He argues that he rented room 132 and had an expectation of privacy in that room. He claims that he did not consent to a search of his room nor did he abandon the room. He argues that he told the officers that the marijuana in room 121, not the key to room 132, belonged to Shafon Black. He contends that at most, the state's witnesses reveal that he disclaimed an interest in the key to room 132, rather than the motel room itself. The state contends that the trial court properly determined that the defendant had disclaimed any interest in room 132.

At the suppression hearing, Officer Johnny Murphy testified that after the defendant told the officers that the key to room 132 was not his and that it belonged to the girl in room 121, Officer Murphy asked the girl if the officers could search her property. He said the girl said that they could search anything she had. He said he asked her if room 132 was her room and she said no. He said that he told her the

defendant said it was her room and that she responded, "Well, you can search anything I've got. I don't have anything on me." He testified that the defendant never asserted any claim to room 132 nor asked them not to search it. The rest of Officer Murphy's testimony and the testimony of Officer Cherry, Officer Alexander, and Patricia Lishman was substantially similar to their testimony at trial.

The defendant testified that on August 31, he was visiting in room 121 when the police came. He said that at Officer Cherry's request, he emptied his belongings onto a chair. He said he removed a key from his sock without being asked. He said that Officer Cherry told him to pick up his things and that as he was doing this, Officer Murphy told the other officers that he appeared nervous. He said Officer Murphy asked him what was wrong. He said he replied that nothing was wrong except that the police were harassing him in front of the others when they had no cause to search him. He said the officers then told him to throw down the key and the rest of his things. He said that he objected to the officers taking his belongings and that he kept getting louder and angrier. He said one thing led to another, and the police pinned him to the ground. He said he never denied that the key was his, and the officers never asked him whether the key or the room were his. He stated that it seemed like the officers "already had it in for" him.

The defendant testified that he had rented room 132 and expected privacy in that room. He said the people in room 121 were smoking marijuana. He said that the officers did not ask him who had the marijuana but that he told them that it belonged to the girl.

The trial court denied the defendant's motion to suppress, finding that Officer Cherry properly searched the occupants of room 121 because he smelled marijuana, thereby realizing that the occupants of room 121 were committing a

8

misdemeanor in his presence. It found that the defendant disclaimed any interest in the key to room 132 and asserted that it belonged to Ms. Black. It noted that although Ms. Black said that room 132 was not her room, she told the officers they could search anything that she had. It found that the officers did not know that room 132 was registered to the defendant until after they discovered drugs in room 132. It found that the defendant could not disclaim ownership in room 132 and positively assert that someone else had ownership, then later claim an expectation of privacy in the room and the resulting constitutional rights.

> Our supreme court has held:
>
> It is the general law of this State that when one disclaims interest in the premises or possessions searched or in the articles seized he cannot question the legality of the search and seizure and it necessarily follows there can be no valid objection to evidence obtained by such search.

Bowman v. State, 362 S.W.2d 255, 257 (Tenn. 1962) (citations omitted); see also Kelley v. State, 566 S.W.2d 858, 859 (Tenn. 1978); Miller v. State, 520 S.W.2d 729, 734 (Tenn. 1975). In the present case, the trial court found that the defendant denied the key to room 132 was his and told the officers that it belonged to Ms. Black. We will uphold the trial court's factual findings at the suppression hearing unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Officers Cherry and Murphy testified that the defendant denied the key was his and said it belonged to Ms. Black. Officer Murphy said the defendant never told them that room 132 was his room nor asked the officers not to search it. The evidence does not preponderate against the trial court's finding. The defendant disclaimed any interest in the room and, therefore, cannot later claim a legitimate expectation of privacy therein. The defendant argues that at most, he only disclaimed the key to room 132, not the room itself. We do not believe his distinction is reasonable under the facts. By disclaiming the key, the defendant disclaimed his connection to the room. We hold that

9

the trial court properly denied the defendant's motion to suppress the evidence obtained from room 132.

### III. SENTENCING

The defendant contends that his sentence is excessive. He argues that the trial court should have considered that his conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. 40-35-113(1). The state contends that the trial court properly rejected this factor because it does not apply to cocaine offenses. Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d), -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

10

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court for possession of cocaine with the intent to sell, a Class B felony, is presumptively the minimum sentence in the range when no enhancement or mitigating factors are present. See Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The presentence report reflects that the then twenty-four-year-old defendant is a high school graduate and has received some training in carpentry. Although the defendant declined to give any information for the report, a prior presentence report stated that he had worked at the Sears Warehouse and fast food restaurants. The prior report stated that the defendant reported initially using drugs at age seventeen with occasional use thereafter. The presentence report reveals an extensive prior criminal record including an October 1998 conviction for driving on a suspended license; February 1998 convictions for driving with a revoked license, a weapons offense, possession of narcotics equipment, and evading arrest; a September

11

1997 conviction for contributing to the delinquency of a minor; a December 1996 conviction for a traffic offense; October 1995 convictions for theft of property valued between one thousand and ten thousand dollars and aggravated burglary; and October 1994 convictions for criminal trespassing, evading arrest, and a weapons offense. The defendant received concurrent three-year sentences as a Range I, standard offender for the theft and aggravated burglary convictions. He was released on parole in July 1996, and his parole was revoked in January 1997, when he incurred new charges. The defendant's juvenile record begins at age eleven and includes grand larceny, theft, auto theft, concealing stolen property, possession of marijuana, and public intoxication.

The trial court applied the following enhancement factors from Tenn. Code Ann. § 40-35-114:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> . . . .
>
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; [and]
>
> . . . .
>
> (20) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult[.]

The trial court rejected mitigating factor (1), that the defendant's conduct neither caused nor threatened serious bodily injury, noting that crack cocaine "is an inherently addictive and dangerous substance that [the defendant] had in his possession in a very significant quantity." See Tenn. Code Ann. § 40-35-113(1). Given the three enhancement factors and the lack of mitigation, the trial court imposed the maximum sentence of twelve years for the felony conviction.

12

The trial court's findings justify its rejection of Tenn. Code Ann. § 40-35-113(1). Although mitigating factor (1) applies unless the threat of serious bodily injury exists, the trial court emphasized the large quantity of cocaine possessed by the defendant and the particularly addictive nature of crack cocaine. Thus, the record supports the sentence imposed by the trial court.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
David H. Welles, Judge


_____
L. Terry Lafferty, Senior Judge